**In re William L. MINNICH, Jr., Debtor.**

**No. 10–23652REF.**

United States Bankruptcy Court, E.D. Pennsylvania.

June 2, 2011.

Jennifer R. Alderfer, John A. DiGiamberardino, Case DiGiamberardino & Lutz, PC, Wyomissing, PA, for Debtor.

*STATEMENT SUPPORTING ORDER DATED JUNE 2, 2011, DENYING DEBTOR'S MOTION FOR CONTEMPT AGAINST THE INTERNAL REVENUE SERVICE FOR VIOLATION OF THE AUTOMATIC STAY*

RICHARD E. FEHLING, Bankruptcy Judge.

## I.  INTRODUCTION

Debtor has moved for contempt against the Internal Revenue Service for its alleged violation of the automatic stay of Section 362(a) of the United States Bankruptcy Code, 11 U.S.C. § 362(a). Debtor complained of two acts by the Service: First, the Service filed a tax lien against Debtor after he had filed this Chapter 13 case; and, second, the Service notified Debtor after he had filed this bankruptcy that the Service was suspending his participation in the electronic filing program, thereby negatively impacting Debtor's business and profession as a tax-preparing accountant. Debtor agreed, at the hearing on this matter, that the Service had withdrawn the tax lien; that issue is therefore resolved and no longer the subject of Debtor's motion. The parties disputed, tried, and argued whether the suspension of Debtor's ability to file returns electronically was/is, or was not/is not, a violation of the automatic stay.

I received the parties' testimony and exhibits at the hearing in this matter, and this matter is now ripe for my decision. Upon my consideration of the evidence presented at the hearing and the arguments of the parties, I find and conclude that the Service's suspension of Debtor's electronic filing capability was not based on an attempt to collect a debt and constituted the exercise by the Service of its police and regulatory powers. Debtor, therefore, failed to prove grounds sufficient for me to find that the Service was or is in contempt of the automatic stay or was or is otherwise subject to sanctions for its suspension of Debtor's participation in the electronic filing system. Therefore, I will deny Debtor's motion for contempt through the accompanying order. This Statement constitutes my specific findings of fact and conclusions of law.

## II.  DISCUSSION

### A.  Procedural and Substantive Factual Background

#### 1.  Procedural Background

Debtor filed this Chapter 13 case on December 21, 2010. Debtor included the Service in his matrix of parties in interest as well as in his Schedule E—Creditors

Holding Unsecured Priority Claims (in the amount of $65,000). On January 4, 2011, Debtor served the Service with a copy of his Chapter 13 Plan. On January 30, 2011, notice of Debtor's Section 341[1] meeting with creditors was served on, among others, the Service. The Service filed its original proof of claim in this case on February 17, 2011. On April 14, 2011, Debtor filed his Motion for Contempt Against the Internal Revenue Service for Violation of the Automatic Stay (the "Contempt Motion"). The Service filed its opposition to the Contempt Motion on May 13, 2011 (the "Response"). The hearing, originally set to be held on May 3, 2011, was continued to, and held on, May 19, 2011. Debtor testified at the hearing and both parties moved certain exhibits into the record without opposition.

Both parties appeared to assume that the facts alleged in the Contempt Motion were also in evidence, so I will include them in my factual findings. This is particularly appropriate because the answer filed by the Service did not contradict or deny any of Debtor's factual statements alleged in the Contempt Motion. I will therefore consider the factual allegations in the Contempt Motion as part of the substantive evidence in this dispute. Similarly, Debtor did not refute or contradict any of the allegations or exhibits in the Service's Response.

Debtor testified and both parties argued about the interpretation and applicability of Publication 3112,[2] thereby implicitly consenting to my consideration of its descriptions of the applicable procedures of the Service relating to authorization to use electronic filing. I will consider (and describe further) the testimony from the hearing, the exhibits from the hearing, and the pleadings and exhibits in both the Contempt Motion and the Service's Response.

## 2. Substantive Factual Background

Debtor is a certified public accountant whose practice includes the preparation and electronic filing of federal income tax returns.[3] At the time Debtor filed his Chapter 13 petition, he was indebted to the Service in the amount of $67,227.62, for back taxes, interest, and penalties from 2006–2009.[4] On December 15, 2009, the Service had completed an audit of Debtor's tax returns for 2006 and 2007, disallowed numerous deductions, and assessed Debtor, through Income Tax Examination Changes—Form 4549, for deficiencies in his payment of taxes, including penalties and interest.[5] Basically, Debtor was overly aggressive in deducting substantial expenses he incurred in his vacation home because he claimed to occasionally take clients' tax papers with him to work on at the vacation home. Debtor signed Form 4549 on December 21, 2009, indicating that he did not intend to appeal the report. According to a notice to Debtor from the Electronic Products & Services Support division of the Service (the "EPSS") dated

---

1. 11 U.S.C. § 341.

   All citations in this Statement comply with Judge Richard A. Posner's suggested citation form in the appendix to his 1986 law review article. Richard A. Posner, Goodbye to the Bluebook, 53 U. Chi. L. Rev. 1343 Appendix (Fall, 1986).

2. Publication 3112 was attached to the Service's Response to the Contempt Motion as Exhibit "Government–102." Publication 3112 sets forth the Service's description of its

Rev. Proc. 2007–40, Requirements of Participants in the IRS *e-file* Program, as included in Internal Revenue Bulletin (IRB) 2007–26, published June 25, 2007.

3. Contempt Motion, ¶¶ 2 & 3.

4. Contempt Motion, ¶ 5.

5. May 19, 2011 hearing, Exhibit "Government–201."

August 13, 2010, the penalties were actually assessed against Debtor on February 8, 2010.[6]

The August 13, 2010 notice to Debtor described two grounds asserted by the Service that would jeopardize Debtor's ability to e-file.[7] The first ground in the August 13, 2010 notice was that Debtor had balances due on his taxes for 2006, 2007, and 2008, but had no valid installment agreement in place. The second ground was that Debtor had been assessed civil miscellaneous penalties on February 8, 2010, which, the EPSS stated, must be abated. Debtor responded to the August 13, 2010 notice with his September 6, 2010 letter to the EPSS.[8] He explained that he was in an extremely poor economic crisis due to the downswing in the economy and the lack of work. He noted his intention to comply with Circular 230 and his pending effort to sell his home. He warned in the September 6, 2010 letter that suspending his e-filing authorization would cause him further economic collapse.

Nevertheless, on November 22, 2010, the EPSS rejected his defense of poor economic condition, noting that Debtor had done nothing to put an installment payment program into effect.[9] The EPSS also stated in the November 22, 2010 letter:

> Your employer identification number (EIN) is not active. To activate this number you may call the Business and Specialty Tax Line at (800) 829–4933.

In addition, on February 8, 2010 you were assessed multiple miscellaneous civil penalties. The assessment of these penalties violates the requirements for participation in IRS e-file.

Failure to resolve the issue(s) may result in a sanction. Sanctions include a written reprimand, suspension for one of two years, or an expulsion from participation in IRS e-file.[10]

On January 6, 2011, after Debtor had filed this Chapter 13 case and after the Service had received notice of the filing, the Service prepared and signed a Notice of Federal Tax Lien Form 668(Y)(c) against Debtor, formally noticing a tax lien against Debtor effective on January 19, 2011.[11] On February 17, 2011, however, after receiving direct and specific notice from Debtor's counsel about the pending bankruptcy, the Service prepared, signed, and filed a Withdrawal of Filed Notice of Federal Tax Lien Form 10916(c).[12]

On March 14, 2011, the EPSS sent another letter to Debtor informing him that it would recommend suspending Debtor's authorization to participate in the e-filing program.[13] After a number of communications about Debtor's bankruptcy between Debtor's counsel and the Service, the Service refused to rescind the March 14, 2011 notice of recommendation of suspension.[14]

### B. Discussion—Conclusions of Law

### 1. Section 362(a)(6)—Efforts To Collect a Debt Are Stayed

■ At issue is whether the Service violated the automatic stay of Section

---

6. May 19, 2011 hearing, Exhibit "Debtor–1."

7. *Id.*

8. May 19, 2011 hearing, Exhibit "Debtor–2."

9. May 19, 2011 hearing, Exhibit "Debtor–3."

10. *Id.*

11. Contempt Motion, "Exhibit A."

12. Response, "Exhibit Government–101." Again, the parties acknowledged and agreed in open Court that the tax lien issue has been resolved and is not part of this dispute.

13. May 19, 2011 hearing, Exhibit "Debtor–4."

14. Contempt Motion, ¶¶ 15 & 16.

362(a)(6),[15] by attempting to collect a prepetition obligation. Pursuant to Section 362(a)(6), the filing of Debtor's bankruptcy petition automatically "operates as a stay, applicable to all entities, of—(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title. . . ." Debtor claims that the threat of suspending his authorization to use electronic filing was made to collect the assessed taxes, penalties, and interest. The Service denies that claim.

If an entity violates Section 362(a), that entity is subject to sanctions pursuant to Section 362(k)(1),[16] which provides that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." I have reviewed and interpreted Section 362 of the Bankruptcy Code in numerous decisions. See *In re Miller*, 447 B.R. 425 (Bankr.E.D.Pa.2011); *In re Clouse*, 446 B.R. 690 (Bankr.E.D.Pa., 2010); *In re Douglas Young Builder, Inc.*, 2009 WL 2827959, No. 09–21940 (Bankr. E.D. Pa., September 1, 2009); and *In re Mikulski*, No. 10–21594 (Bankr.E.D.Pa., August 18, 2010) (oral opinion, transcript filed on the docket on September 2, 2010).

Notice to the Service is unquestioned. Whether the Service knew about Debtor's filing before it gave notice of the suspension of e-filing, the Service certainly knows now and is refusing to withdraw its position. The next element that I must determine is whether a violation of the stay took place. The parties correctly focus on the

language of Publication 3112 as controlling the outcome of this dispute. Publication 3112 contains, among other materials, the following three provisions: [17]

1.  Become an Authorized IRS *e-file* Provider in 3 Steps

    \* \* \*

    STEP 3—Pass a Suitability Check

    The IRS conducts a suitability check on the applicant . . . to determine the applicant's suitability to be an Authorized IRS *e-file* Provider. . . .

    Suitability checks may include the following:

    \* \* \*

    A tax compliance check to ensure that all required returns are filed and paid, and to identify assessed penalties; . . . [18]

2.  Denial to Participate in IRS *e-file*

    \* \* \*

    An applicant may be denied participation in IRS *e-file* for a variety of reasons that include but are not limited to:

    \* \* \*

    3.  Failure to timely pay any Federal, state, or local tax liability;

    4.  Assessment of penalties; . . . [19]

3.  Sanctioning

    Violations of IRS *e-file* requirements may result in warning or sanctioning an Authorized *e-file* Provider. The IRS may sanction any Provider that fails to comply with any requirement or any provision of this publication, as well as other publications and notices that govern IRS *e-file*. The IRS may

---

**15.** 11 U.S.C. § 362(a)(6).

**16.** 11 U.S.C. § 362(k)(1).

**17.** During argument on May 19, 2011, neither counsel referred me to any particular language in any specific section of Publication

3112. The provisions that I identify are based upon my review of Publication 3112.

**18.** Publication 3112, p. 11.

**19.** Publication 3112, p. 13.

also sanction a Provider for the same reasons that it denies an application to participate in IRS *e-file*.... [20]

Debtor argues that the Service's reliance upon and enforcement of Publication 3112 violates the automatic stay because, he claims, the Service is suspending his e-file privilege to force him to pay his back taxes, penalties, and interest. Debtor claims that suspension of his e-file powers would adversely affect his ability to do business and fund his anticipated Chapter 13 plan. Debtor also challenges the suspension saying it is not fair and too harshly penalizes his ability to do work for others when the issue is his aggressive deductions in reporting and paying his personal taxes.

As I noted during oral argument on May 19, 2011, the wisdom of Publication 3112 and the wisdom of the Service's suspension of Debtor's e-file authorization are beyond my powers. Publication 3112 describes the governing regulations in this matter; the Service's discretion in enforcing its e-filing program is outside my purview. I am limited to interpreting Publication 3112 and determining whether the Service's enforcement of it violates Section 362. In this instance, it does not.

Although Debtor is correct that the Service, pursuant to Publication 3112, could suspend Debtor's e-file authorization based upon his non-payment of taxes, they did not do so. The Service was quite clear (and limited) in the March 14, 2011 letter to Debtor by telling him that he had failed

to resolve [21] the multiple miscellaneous civil penalties that had been assessed against him on February 8, 2010. The Service noted: "The assessment of these penalties violates the requirements for participation in the IRS e-file program." [22] The Service did not say that Debtor's suspension arose from the assessment and non-payment of the penalties, but only from the assessment.

Debtor argued that the Service did not prove that it suspends the e-file authorization for all those who are assessed penalties, not merely those who were assessed and did not pay. Debtor misses the burdens imposed by that argument. Debtor had the tools of discovery available to him, if he chose to exercise them, to determine the Service's policy. Interrogatories, requests for production of documents, depositions, and all other federal discovery rules [23] were at Debtor's disposal if he, through his counsel, chose to invest the substantial time and expense to avail himself of them in this contested matter. Had Debtor proven (which he did not) that the only circumstances in which the Service exercised its discretion to suspend e-filing authorization were when the penalties remained unpaid, my conclusion might be different. If Debtor had proven (which he did not) that the Service never suspended e-file authorization if the penalties were paid, my conclusion might be different.

The only evidence relating to suspension of Debtor's e-file authorization is Publication 3112, which clearly permits the Ser-

---

**20.** Publication 3112, p. 31.

**21.** Although it might be possible to interpret this language as referring to non-payment, it could also be interpreted as referring to Debtor's failure to appeal the adverse determination.

**22.** May 19, 2011 hearing, Exhibit "Debtor–4."

**23.** Fed. Rule Bankr. Proc. 9014(a) and (c). Bankruptcy Rule 9014(c) incorporates into contested matters (such as the dispute at hand) the discovery rules found in Bankruptcy Rules 7026 and 7028–7037, Fed. Rules Bankr. Proc. Bankruptcy Rules 7026 and 7028–7037 incorporate verbatim into adversary proceedings the discovery rules found in Fed. Rules Civil Proc. 26 and 28–37.

vice to suspend Debtor's e-filing when the civil penalties were assessed against him. Is the Service's policy wise? Perhaps not. Does administering that policy assure that Debtor cannot earn his livelihood by filing his clients' income tax returns? Perhaps. Nevertheless, I am not called upon to determine the wisdom of the Service's rules or regulations. Neither am I called upon to determine the wisdom of the Service's implementation and enforcement of its policies. The Service's rules, regulations, and policies exist; the Service exercised its prerogatives under those rules, regulations, and policies; and the Service stripped Debtor of his e-filing. Wise? I do not say. Prudent? Beyond my powers. Violates Section 362(a)? Not proven in this case.

I therefore find and conclude that the Service did not violate Section 362(a) of the Bankruptcy Code for suspending Debtor's e-filing authorization based upon the unquestioned assessment against Debtor of penalties for his wrongfully taken business deductions.

## 2. Section 362(b)—Government Police and Regulatory Powers Are Not Stayed

■ Alternatively, if the Service's suspension of Debtor's authorization to e-file were somehow found to violate the automatic stay of Section 362(a), a second analysis protects the Service's action. I believe that suspension of Debtor's e-filing fits within the police and regulatory power of the Service, thereby falling within one of the exceptions to the stay set forth in Section 362(b). Specifically, under Section 362(b)(4),[24] Section 362(a) does not prevent actions by a governmental unit to enforce

its police and regulatory powers. As explained by the Service in its Response, courts use two disjunctive tests to determine if a particular government action is excepted from the automatic stay: (1) The "pecuniary purpose" test and (2) the "public policy" test. *Universal Life Church, Inc. v. United States (In re Universal Life Church, Inc.)*, 128 F.3d 1294, 1297 (9th Cir.1997).[25] In this case, both tests are satisfied.

■ Under the pecuniary purpose test, I must determine whether the government action relates primarily to the protection of the government's pecuniary interest in Debtor's property or to matters of public safety and welfare. If the government action is pursued "solely to advance a pecuniary interest of the government unit," no exception to the stay applies. *Id.* In *Universal Life Church*, the government's action promoted public welfare by assuring public and potential donors that contributions would be used for legitimate charitable purposes. *Id.* I agree with the Service that its suspension of Debtor's e-filing authorization fulfills the government's interest in assuring that those who use e-filing take care to prepare their own returns accurately and properly. Suspension of Debtor's e-filing did not have a purpose that was primarily pecuniary and it is therefore excepted from prohibition by the automatic stay.

■ The public policy test distinguishes between government actions that effectuate policy and those that adjudicate private rights. *Id.* Suspension of Debtor's e-filing authorization protects the integrity of the tax system; it does not assert the government's specific right to payment

---

24. 11 U.S.C. § 362(b)(4).

25. The Ninth Circuit's decision in *Universal Life Church* was adopted and followed in the

Third Circuit in *In re Bankruptcy Appeal of Allegheny Health, Education and Research Foundation*, 252 B.R. 309, 327 (Bankr. W.D.Pa.1999).

against Debtor. The import of the Service's suspension of e-filing privileges is to protect the integrity of the tax system from tax preparers against whom penalties have been assessed. Publication 3112 provides that tax preparers may be suspended from e-filing for violations of the Service's e-file rules and requirements that, in the opinion of the Service, have an adverse impact on the quality of e-filed returns or the e-file program.[26] I therefore find and conclude that the Service is excepted, in this case, from the automatic stay of Section 362(a).

### III. CONCLUSION

In light of the above findings of fact, conclusions of law, and discussion, I find that the Service did not violate the automatic stay of Section 362(a) and, alternatively, is excepted from the stay of section 362(a) pursuant to Section 362(b)(4). For these reasons, I will deny Debtor's Contempt Motion. An appropriate Order follows.

### ORDER

AND NOW, this 2d day of June, 2011, upon my consideration of Debtor's Motion for Contempt Against the Internal Revenue Service for Violation of the Automatic Stay, filed on April 14, 2011 (the "Contempt Motion"), the hearing on the Contempt Motion and based upon the findings of fact, conclusions of law, discussion, and rationale stated in the accompanying Statement in support of this Order denying the Contempt Motion,

---

26. Publication 3112, pp. 31 & 32.
    The Service's evidence supporting this argument is sparse. Counsel for the Service pointed to sections of Publication 3112 that supported the policies extant through the program and suspension from the program. Exception from the stay under Section 362(b)(4)

IT IS HEREBY ORDERED that the Contempt Motion is DENIED.

is only an alternative holding that might not stand up to a stricter analysis of the evidence. I find, however, that Publication 3112, first introduced into the hearing by Debtor's counsel, provides sufficient support for the Service's alternative argument.